480 So.2d 1153 (1985)
FIRST NATIONAL BANK OF VICKSBURG, MS
v.
William T. MIDDLETON, Clabe K. Middleton, Jr., Individually, and Clabe K. Middleton, Jr., Admr. of Estate of Clabe K. Middleton, Sr.
No. 55828.
Supreme Court of Mississippi.
November 27, 1985.
Rehearing Denied January 15, 1986.
*1154 Robert R. Bailess, John C. Wheeless, Jr., William G. Beanland, Wheeless, Beanland, Shappley & Bailess, Vicksburg, for appellant.
John W. Prewitt, Sr., Prewitt & Courteau, Bobby D. Robinson, Vicksburg, for appellees.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and PRATHER, JJ.
ROY NOBLE LEE, Presiding Justice, for the Court:
The First National Bank of Vicksburg, Mississippi, (The Bank) appeals from a judgment of the Chancery Court of Warren County, dismissing the complaint of interpleader filed by the bank involving funds claimed, respectively, (1) by William T. Middleton and (2) by Clabe K. Middleton, Jr., individually, and Clabe K. Middleton, Jr., Administrator of the Estate of Clabe K. Middleton, Sr. The bank assigns two errors in the judgment of the lower court.

The Facts
Clabe K. Middleton, Sr. was eighty (80) years of age at the time of his death on July 15, 1983. He was a lifelong resident of Warren County, Mississippi, maintaining his residence at Yokena, Mississippi, during the last years of his life. He was survived by two sons, William T. Middleton, who had lived with his father until William's marriage in 1974, and Clabe K. Middleton, Jr. William T. Middleton enjoyed a close personal relationship with his father, visiting with him on an average of once each week and assisting him in various matters.
Clabe K. Middleton, Sr. had a certificate of deposit in the First National Bank (appellant) dated July 26, 1982, and with maturity date of January 24, 1983, in the sum of thirty-five thousand three hundred seventy-three dollars ninety-three cents ($35,373.93). According to the certificate of deposit, Clabe K. Middleton (Sr.) and William T. Middleton were joint tenants with right of survivorship and not as tenants in common. On or after the maturity date of the certificate, William T. Middleton redeemed the certificate of deposit and the proceeds were placed in a joint account in the name of "Clabe K. Middleton, by William T. Middleton," and a signature card establishing the account was executed by William T. Middleton.
After the death of Clabe K. Middleton, Sr., his son, Clabe K. Middleton, Jr., qualified as administrator of his estate and made demand upon the bank to transfer the funds in the account designated "Clabe K. Middleton, Sr. by William T. Middleton" into the estate account, and, accordingly, the bank transferred the sum of thirty-one thousand four hundred fifteen dollars seventy-two cents ($31,415.72) into the account of "Clabe K. Middleton, Jr., Administrator of the Estate of Clabe K. Middleton, Sr., Deceased." Upon learning of the transfer of said funds, William T. Middleton made demand upon the bank for the funds in the account designated "Clabe K. Middleton, Sr., by William T. Middleton," which bore only the authorized signature of William T. Middleton. Attorneys representing William T. Middleton and his brother, Clabe K. Middleton, Jr., individually and as administrator, made respective demands upon the bank for the funds on behalf of their clients, and there was oral and written contact made between those attorneys and the bank's attorneys. As a result, the bank froze the funds in the Clabe K. Middleton, Sr. estate account, and, after a written demand from the attorney of William T. Middleton for the money, on September 16, 1983, the bank filed a complaint of interpleader on September 20, 1983, requesting the court to determine whether William T. Middleton or Clabe K. Middleton, Jr., Administrator of the Estate of Clabe K. Middleton, Sr., Deceased, was entitled to the funds and to discharge the bank from all liability in the matter.
*1155 William T. Middleton filed an answer and counterclaim to the complaint for interpleader wherein he stated that the bank erroneously transferred the funds from the account of "Clabe K. Middleton, Sr. by William T. Middleton" to the estate account and that he has consistently and persistently made demand upon the bank for said funds. He admitted the allegation of the complaint for interpleader that both he and Clabe K. Middleton, Jr., as administrator of the estate of Clabe K. Middleton, Sr., have made demand upon the bank for the said funds. He further asked for judgment against the First National Bank in the sum of $31,415.72 together with interest. William T. Middleton also filed a cross-claim against Clabe K. Middleton, Jr., individually, and as Administrator of the Estate of Clabe K. Middleton, Sr., alleging that Clabe K. Middleton, Jr., on or about January 21, 1983, requested the First National Bank to close out the said accounts and move the proceeds of the funds into the estate account; that Clabe K. Middleton, Jr., then attempted to remove the funds from the estate account, but that the bank froze said account; and that he, William T. Middleton, is the owner of said funds and is entitled to same.
Clabe K. Middleton, Jr., Administrator of the Estate of Clabe K. Middleton, Sr., answered the complaint for interpleader and alleged that the bank arbitrarily froze the funds which had been transferred to the estate account when the bank knew that William T. Middleton was not making any claim to said funds, but, to the contrary, William T. Middleton had advised officers of the bank that he desired the funds continued in the estate; and that the bank had exercised willful, wanton, and arbitrary bad faith in freezing the funds, causing harm and damage to Clabe K. Middleton, Jr., individually, and as administrator of his father's estate. He then filed a counterclaim against the bank asking damages in the sum of one million five hundred thousand dollars ($1,500,000).

The Law
The bank has assigned the following errors in the judgment of the lower court, which questions will be addressed as one:
(1) The lower court erred in holding that Rule 22 of the Mississippi Rules of Civil Procedure extended the jurisdiction of the chancery court in this case beyond its constitutional limits.
(2) The lower court erred in dismissing the interpleader based upon allegations that the stakeholder had independent liability.
The chancery court is a court of limited jurisdiction, as provided by Section 159, Miss. Const. 1890. This includes all matters in equity and interpleader actions have historically been considered equitable matters within the chancery court's jurisdiction. Historically, equitable interpleader has four requirements:
1. The same thing, debt, or duty must be claimed by both or all the parties against whom the relief is demanded;
2. All their adverse titles or claims must be dependent on or be derived from a common source;
3. The person asking the relief  the plaintiff  must not have or claim any interest in the subject matter;
4. He must have incurred no independent liability to either of the claimants; that is, he must stand perfectly indifferent between them in the position of a stakeholder.
Griffith, Mississippi Chancery Practice, § 23 (2d ed. 1950).
We are of the opinion that Rule 22 of the Mississippi Rules of Civil Procedure, adopted by this Court on May 26, 1981, terminated the historical requirements for interpleader in the chancery courts. We are of the opinion that Rule 22 does not enlarge the jurisdiction of the chancery courts, that it is procedural, and its purpose is to broaden and extend the scope of the remedy in the chancery court.
In 48 C.J.S. Interpleader § 5, at 125-126 (1981), the principle is stated as follows:
Some statutes or rules expressly provide for interpleader... .
Unless the statute clearly provides otherwise, it does not supersede the ordinary *1156 equitable remedy. In fact, the remedy for interpleader provided for by statutes or rules is in addition to and in no way limits, the remedy of equitable interpleader. The statute is purely procedural, and does not destroy, or change the nature of, equitable interpleader; it merely broadens or extends the scope of the remedy.
* * * * * *
The statute and court rules are designed to eliminate the technicalities which formerly limited the use of interpleader, and thereunder interpleader is available to cover any situation of exposure to multiple liability under the procedure outlined in the rule.
Statutes or rules providing for interpleader are remedial and must be liberally construed, to effectuate their beneficient and utilitarian purposes, and to avoid injustice. Thus, the salutary purpose intended in permitting interpleader should not be defeated upon technical grounds without substance, and any doubts should be resolved in favor of permitting an interpleader action to lie.
The comment to Rule 22, Mississippi Rules of Civil Procedure, among other matters, states:
It is intended that Rule 22 be applied liberally with a view toward increasing the availability of interpleader in eliminating historical technical restraints on a device that are not founded on adequate policy consideration. As a result, the four historical limitations on interpleader should be of no great significance.
The primary test for determining the propriety of interpleading the adverse claimants and discharging the stakeholder is whether the stakeholder legitimately fears multiple vexation directed against a single fund.
This Court has looked to the comparable federal rule for guidance in considering questions presented under the Mississippi Rules of Civil Procedure. Stanton & Associates v. Bryant Constr. Co., 464 So.2d 499, 505, fn. 5 (Miss. 1985); Bourn v. Tomlinson Interests, Inc., 456 So.2d 747, 749 (Miss. 1984); Stringfellow v. Stringfellow, 451 So.2d 219, 221 (Miss. 1984); Brown v. Credit Center, Inc., 444 So.2d 358, 364, fn. 1 (Miss. 1983).
The lower court declined to accept equity jurisdiction over the suit, concluding that to do so would be an expansion of limited jurisdiction long established. We do not construe Rule 22 to extend or limit jurisdiction of the chancery court. See Rule 82(a), Miss.R.Civ.Proc.
In 7 Wright and Miller, Federal Practice and Procedure, § 1704 (1972), it is stated that interpleader is a procedural device used to resolve adverse multiple claims against a single party, assuming that the court has subject matter jurisdiction; that the four historical limitations can be viewed not as jurisdiction prerequisites, but, as limitations on the availability of interpleader as a remedial measure; that Rule 22 arguably expands the remedy and not the jurisdiction of the chancery court; and that the trend has been directed toward increasing the availability of interpleader.
The lower court stated in its opinion that "If this court accepted jurisdiction of the bill [for interpleader] it would have to litigate the compulsory counterclaims, one for 1.5 million dollars, both of which sound in tort." Of course, this would not affect the jurisdiction of the chancery court because, having taken jurisdiction on any one ground of equity, it could proceed in the one suit to complete adjudication and settlement of all disputed questions involved in the entire transaction.
The lower court also considered the fourth traditional requirement that the bank had no independent liability. The Eighth Circuit specifically held that it would not follow the historical rule regarding independent liability in Dakota Livestock Co. v. Keim, 552 F.2d 1302 (8th Cir.1977). In Libby, McNeill & Libby v. City National Bank, 592 F.2d 504 (9th Cir.1978), the Ninth Circuit Court of Appeals stated:
The mere potentiality of independent stakeholder liability, separate from liability *1157 for the interpleaded fund, will not defeat interpleader jurisdiction. Yet, the defendant in an interpleader action who also counterclaims must still make some claim against the interpleaded fund.
592 F.2d at 507-508. See also Hebel v. Ebersole, 543 F.2d 14 (7th Cir.1976); Odum v. Penn Mutual Life Ins. Co., 288 F.2d 744 (5th Cir.1961).
The comment to Rule 22 further states:
The primary test for determining the propriety of interpleading the adverse claimants and discharging a stakeholder is whether the stakeholder legitimately fears multiple vexation directed against a single fund.
The appellee Clabe K. Middleton, Jr. argues that the stakeholder bank had no legitimate fear of vexatious claims being advanced against it as a result of the single fund involved. That argument is grossly misplaced. The bank has never claimed an interest in the funds, while the two appellees, brothers and sole heirs-at-law of Clabe K. Middleton, Sr., claim the funds, one for himself and the other for the estate. The brothers, in person and by their attorneys, made demand upon the bank for the funds. As a result of those demands and threatened suits, the bank filed its complaint for interpleader. William T. Middleton answered and admitted the contested claims on the part of himself and his brother (administrator). He proceeded further and filed a cross-claim against his brother, administrator of his father's estate, to obtain an adjudication that the funds, which were claimed by the administrator, were, in fact, his as a result of the joint account. Clabe K. Middleton, Jr., administrator, filed a counterclaim against the bank for $1,500,000, because the bank declined to release the funds to him.[1]
In our opinion, this is a proper case for an interpleader by the bank of funds held by it. The bank has no interest in the funds. Both parties are threatening to sue the bank for the funds. The bank only wants the party who is rightfully entitled to the funds to receive same. Without question, vexatious suits are threatened against it. If the bank releases the funds to one party, the other party will sue it. The controversy is between the Middletons. In the action of interpleader, those parties can join issues and the courts can determine whether William T. Middleton is entitled to the funds under a joint account, or whether his brother, Clabe K. Middleton, Jr., as administrator, is entitled to it on behalf of the estate.
We are of the opinion that the lower court erred in dismissing the complaint for interpleader and the judgment of the lower court is reversed, judgment is rendered here for the bank, and the cause is remanded to the lower court for further proceedings not inconsistent with this opinion.
REVERSED AND RENDERED; REMANDED TO THE LOWER COURT FOR FURTHER PROCEEDINGS.
PATTERSON, C.J., WALKER, P.J., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
ANDERSON, J., not participating.
NOTES
[1] The record indicates that the administrator desired to remove the funds from the bank to the Deposit Guaranty National Bank.