IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 30, 2008

Charles R. Fulbruge III
Clerk

No. 08-60060
Summary Calendar

DANIEL H TARVER

Plaintiff - Appellant

v.

COLONIAL LIFE & ACCIDENT INSURANCE CO

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:05-CV-82

Before KING, DAVIS, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT:[*]

Plaintiff-Appellant Daniel H. Tarver ("Tarver") appeals the district court's grant of summary judgment in favor of Colonial Life & Accident Insurance Company ("Colonial"). Tarver also challenges the district court's denial of his motion for change of venue. For the reasons set forth below, we affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTS AND PROCEEDINGS

This appeal arises out of a dispute regarding disability insurance coverage. In February of 1986, Tarver, a resident of Mississippi, purchased two insurance policies from Colonial, a South Carolina corporation doing business in Mississippi. The first policy provided accident insurance while the second covered sickness and disability. On May 17, 2002, Tarver injured his leg and back which resulted in his unemployment. Having been injured on the job, Tarver became eligible for and received workers' compensation benefits. He also applied for and received one year of total disability benefits from Colonial under his accident policy, the maximum benefit available under that policy for a single period of total disability. Since this injury, Tarver has remained unemployed.

On February 5, 2003, Tarver injured his shoulder and was diagnosed with chronic rotator cuff syndrome and acromioclavicular arthritis. He underwent surgery on June 20, 2003. On August 24, 2003, Tarver submitted a new claim for total disability benefits, this time filing under his sickness and disability policy and citing the date of surgery as the disability onset date.

The sickness and disability policy provides benefits for up to twelve months when the claimant, if injured while unemployed, is confined "at home" and "under the care of a doctor" due to the injury. Colonial sought to obtain medical records from Tarver's treating physicians to determine whether Tarver qualified under the "at home" provision. Based on the medical records received, as well as an assessment from its own medical consultant, Colonial paid seven weeks of disability benefits, determining this to be the reasonable recovery period for Tarver's shoulder surgery. Colonial otherwise denied Tarver's total disability claim and concluded that he did not suffer from a condition which required home confinement past seven weeks.

On February 7, 2005, Tarver sued Colonial, claiming bad-faith breach of contract, intentional tort, and intentional infliction of emotional distress. Tarver sought damages totaling $6 million as well as $5,000 in punitive damages. Tarver later sought to transfer the case from the Southern District of Mississippi, Jackson Division to the Western Division of the same district. The district court denied Tarver's request for a change of venue. Colonial moved for summary judgment under Federal Rule of Civil Procedure 56(b). The district court granted summary judgment in favor of Colonial on all claims and entered judgment on February 21, 2007. Tarver appeals.

## II. STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment de novo. See Richardson v. Monitronics Int'l, Inc., 434 F.3d 327, 332 (5th Cir. 2005). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "We consider the evidence in a light most favorable to [Tarver], the non-movant, but [he] must point to evidence showing that there is a genuine fact issue for trial" to survive summary judgment. Richardson, 434 F.3d at 332. This court reviews a district court's denial of a motion for change of venue for abuse of discretion. Broussard v. State Farm Fire & Cas. Co., 523 F.3d 618, 631 (5th Cir. 2008).

## III. ANALYSIS

A. Bad-Faith Breach of Contract

As a threshold matter, this contract dispute is governed by Mississippi law. See Krieser v. Hobbs, 166 F.3d 736, 739 (5th Cir. 1999) (holding that a

federal court sitting in diversity applies the substantive law of the state in which it sits). Under Mississippi law, contract interpretation is a question of law, not fact. Johnson v. Preferred Risk Auto. Ins. Co., 659 So.2d 866, 871 (Miss. 1995) (en banc). Any insurance policy that is plain and unambiguous will be construed as written. Pate v. Conseco Life Ins. Co., 971 So.2d 593, 595 (Miss. 2008). Any ambiguity will be construed against the drafter and in favor of the insured. Johnson, 659 So.2d at 871. When an insurance policy has two reasonable meanings, it is construed as to give greater indemnity to the insured. Caldwell v. Hartford Accident & Indem. Co., 160 So.2d 209, 213 (Miss. 1964).

To prevail on a bad-faith breach of contract claim against an insurer, the "plaintiff must show that the insurer lacked an arguable or legitimate basis for denying the claim, or that the insurer committed a wilful or malicious wrong, or acted with gross and reckless disregard for the insured's rights." Liberty Mut. Life Ins. Co. v. McKneely, 862 So.2d 530, 533 (Miss. 2003) (en banc); see also State Farm Mut. Auto. Ins. Co. v. Grimes, 722 So.2d 637, 641 (Miss. 1998) (en banc). Bad faith is characterized as "conduct which violates standards of decency, fairness or reasonableness." Cenac v. Murry, 609 So.2d 1257, 1272 (Miss. 1992). Bad faith requires a showing of more than bad judgment or negligence; indeed, bad faith "implies the conscious doing of a wrong because of dishonest purpose or moral obliquity." Bailey v. Bailey, 724 So.2d 335, 338 (Miss. 1998) (en banc).

Tarver argues that the district court erred in granting summary judgment in favor of Colonial on his bad-faith breach of contract claim because: (1) the policy's "at home" provision was ambiguous, (2) Colonial substituted the treating physician's determination that Tarver was "totally disabled" for its own medical

4

consultant's assessment of Tarver's condition, and (3) Colonial failed to investigate his claim and pay the benefits due. These arguments are without merit.

(1) Is the policy ambiguous?

Tarver argues that the contract is ambiguous because the policy does not specify a temporal component and does not list all of the activities from which one must be restricted; however, we hold that the terms of the policy are clear. Under the "Benefits for Sickness" heading, the policy defines "totally disabled or disabled" as being "unable to work at your job for pay or benefits" and "under the care of a doctor." A policyholder who is unemployed will receive benefits if the claimant is kept "at home" by the illness and "under the care of a doctor." The policy further defines "at home" as "in your house or yard." However, a policyholder may leave home if so directed by a physician. "Under the care of a doctor" is defined as "being cared for on a regular basis by a doctor other than yourself unless the doctor states that continued treatment in the future would be of no benefit to you."

Coverage depends on a physician's assessment of a claimant's unique condition and attendant restrictions. The insurance policy provides $1,000 of total disability benefits per month up to a twelve-month period for those who qualify under the "at home" provision. Thus, the period of the disability itself is irrelevant as are the particular activities from which a claimant is restricted.

The "at home" contract language does not evidence an attempt by Colonial to disregard Tarver's rights or deny his claim without a legitimate basis. Because the contract language is not ambiguous, Tarver's argument based on the "at home" provision fails to support a finding of bad-faith breach of contract.

(2) Did Colonial act in bad faith in reaching its conclusion that

Tarver was not totally disabled under the terms of the policy?

The record shows that Colonial reviewed Tarver's own claim statement, the treating physician's assessment of his condition, his physical therapist's analysis of his functional capabilities, and also sought the advice of its own medical consultant. Although Tarver's surgeon stated that, in his opinion, Tarver was totally disabled, the surgeon never stated that Tarver was confined "at home." The surgeon's opinion that Tarver was disabled, without an attendant finding that he met the "at home" provision, is not sufficient to qualify under the disability requirements of the policy. None of the professionals who examined Tarver or his medical records found him to be totally disabled as defined by the policy. Colonial based its decision on evidence from several medical experts and did not act in bad faith in denying Tarver's claim.

(3) Did Colonial fail to investigate Tarver's claim and pay the benefits due?

The record reveals that from August 24, 2003, when Tarver filed his claim with Colonial, to February 7, 2005, when Tarver filed suit, Colonial repeatedly attempted to ascertain whether Tarver was restricted to his home by his doctor, the length of the restriction, and the conditions that led to this decision by his doctor. Through its review of available evidence, Colonial determined that Tarver's shoulder surgery may have caused some period of disability, if only for the period of recovery. Thus, Colonial paid Tarver seven weeks of disability while continuing to seek medical records to substantiate a longer disability period. Colonial sought waivers from Tarver to review his medical files and sent follow-up questions to his surgeon. Colonial's investigation of Tarver's claim cannot be characterized as conduct that violates standards of decency, fairness,

6

or reasonableness. See Cenac, 609 So.2d at 1275.[1]

## B. Intentional Tort

Tarver argues that the district court erred in granting summary judgment in favor of Colonial on his intentional tort claim, restating the allegations set forth in his breach of contract claim. The intentional tort claim is a repetition of his breach of contract claim and fails for the same reasons.

## C. Intentional Infliction of Emotional Distress

Tarver also appeals the district court's decision dismissing his claim for intentional infliction of emotional distress. Tarver argues that, through the allegations set forth in his prior two claims, he has provided sufficient evidence to show that Colonial acted with vindictive intent to cause him harm.

Under Mississippi law, a plaintiff may show intentional infliction of emotional distress in one of two ways: (1) by showing a physical harm or mental assault requiring the treatment of a medical professional or (2) where no physical harm results, by showing that defendant's conduct evokes outrage or revulsion. Summers ex rel. Dawson v. St. Andrew's Episcopal Sch., Inc., 759 So.2d 1203, 1211 (Miss. 2000) (en banc). If a claim is based on the defendant's conduct, the behavior must be "so outrageous in character, and so extreme in

---

[1] Tarver argues that the district court erred in refusing to send the claim for punitive damages to the jury. Under Mississippi law, to recover punitive damages, a claimant must "prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." MISS. CODE ANN. § 11-1-65(1)(a). For a punitive damages claim to go to the jury, the judge must find that: (1) the insurance company had no legitimate or arguable reason for denying the claim and (2) the plaintiff has made a showing of "malice, gross negligence, or wanton disregard of the rights of the insured." Life & Cas. Ins. Co. of Tenn. v. Bristow, 529 So.2d 620, 624 (Miss. 1988) (en banc). Both prongs of this test have been addressed above. The district court did not err in denying Tarver's request for punitive damages.

degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Pegues v. Emerson Elec. Co., 913 F.Supp. 976, 982 (N.D. Miss. 1996) (quoting RESTATEMENT (SECOND) OF TORTS §46 cmt. d. (1965)). Furthermore, "[i]n Mississippi damages for mental anguish and emotional upset cannot be considered in absence of finding an independent intentional tort separate from the breach of contract." Life & Cas. Ins. Co. of Tenn. v. Bristow, 529 So.2d 620, 624 (Miss. 1988) (en banc) (internal quotations omitted).

Tarver does not claim any physical or psychological harm. Thus, to resist a motion for summary judgment, he must show that Colonial's conduct was of the type that goes beyond the bounds of community decency. Tarver fails to meet that high standard. As discussed above, Colonial did not attempt to avoid its contract obligations through ambiguous drafting; it diligently investigated Tarver's claim and did not act in bad faith. As the district court found, Colonial's conduct cannot be characterized as outrageous or intolerable in a civilized society.[2]

D. Change of Venue

Under 28 U.S.C. §1404(a), relevant factors for determining a motion for change of venue include "whether the proposed transfer venue is a forum in which the suit could originally have been brought, the convenience of the parties and witnesses, and the interests of justice." Broussard, 523 F.3d at 631. The district court properly weighed these factors. Venue was proper in both the

---

[2] Even if this court were to entertain Tarver's contention that Colonial's behavior was beyond the bounds of decency and could be considered atrocious, Tarver's claim for intentional infliction of emotional distress cannot stand. Tarver does not claim and has not shown that Colonial committed any intentional tort separate from the alleged breach of contract.

Western Division and the Jackson Division of the Southern District of Mississippi. With the exception of Tarver himself, all witnesses, as well as counsel for both parties, are located in the Jackson area. A review of the record shows that the parties filed numerous motions, held a case management conference, and had already engaged in discovery by the time Tarver filed his change of venue motion. Therefore, the district court did not abuse its discretion in denying Tarver's motion for change of venue.

## IV. CONCLUSION

The judgment of the district court is AFFIRMED.